IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENNETH D. GOIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02471-B-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 12) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 15) be **DENIED**, the Commissioner's decision be **REVERSED** and the case **REMANDED.**

## I. BACKGROUND[1]

**A.    Procedural History**

Plaintiff Kenneth Goin seeks judicial review of a final decision by the Commissioner denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In February 2009, Plaintiff protectively filed for benefits alleging a disability onset date of February 28, 2003, due to back pain and high blood pressure. (Tr. 146, 149-50). His applications were denied at all administrative levels, and he

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

now seeks review in this Court. (Tr. 1-3, 12, 58-71, 75-76, 79-83).

B.     Factual Background

At the time of his application, Plaintiff was 49 years old with a high school education and past relevant work as a service technician, gas meter installer, electric meter installer, and water meter repairer. (Tr. 23, 53, 121, 151). In 2000, he began complaining of back pain, and an MRI revealed disc desiccation at the L3-L4 level, with a bulging disc producing marginal central spinal canal narrowing. (Tr. 20).

Plaintiff also had severe hypertension that various medications were unable to control completely. (Tr. 200-03, 205, 207-17, 220). On September 19, 2009, Plaintiff was admitted to the hospital where he was diagnosed with coronary artery occlusive disease, a myocardial infarction, congestive heart failure, and severe ischemic cardiomyopathy. (Tr. 332). Two days later, Plaintiff underwent open-heart quadruple bypass surgery. (Tr. 332, 334-36).

In January 2010, consultative physician Dr. Kanu Patel examined Plaintiff, noting that he had reviewed the medical records from Plaintiff's recent September 2009 hospitalization.[2] (Tr. 436). Dr. Patel found that Plaintiff (1) could never stoop, kneel, crouch, or crawl; (2) could never lift or carry ten pounds; (3) could not sit or stand for longer than a total of one hour per day; and (4) could not walk for longer than five minutes at a time for a total of 30 minutes per day. (Tr. 441-43, 446).

In addition to his physical ailments, Plaintiff's treating physician, Dr. Dee McCrary, diagnosed him as having "anxiety with depression" as early as March 2006. (Tr. 221-22). In

---

[2] This examination was conducted subsequent to Plaintiff's December 10, 2009 hearing before the ALJ. The ALJ ordered the exam because Plaintiff underwent heart surgery after his hearing had been scheduled. (Tr. 55-56).

2

July 2007, Dr. McCrary's notes state: "Follow up of anxiety with depression. It is of moderate intensity. He estimates that the frequency of this symptom is several times a week." (Tr. 196). The diagnosis "anxiety with depression" appears repeatedly throughout Dr. McCrary's treatment notes both before and after December 31, 2008, Plaintiff's date last insured for purposes of DIB. (Tr. 18, 194-202, 205-06, 208-09, 211, 213-14, 219, 221-22, 227, 229).

## C.     The ALJ's Findings

In reviewing Plaintiff's claim, the ALJ found at step one of the sequential evaluation process that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. *Id.* At step two, the ALJ found that, since the alleged onset of disability in February 2003, Plaintiff's degenerative disc disease and hypertension were severe impairments. Further, the ALJ ruled that beginning on September 13, 2009, Plaintiff had the additional severe impairment of coronary artery disease post quadruple coronary artery bypass. *Id.* At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or equal a listed impairment as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 19).

The ALJ determined that, prior to September 13, 2009, Plaintiff's impairments reduced his residual functional capacity ("RFC") to light work with certain limitations. *Id.* At step four, the ALJ found that, prior to September 13, 2009, Plaintiff was capable of performing his past relevant work as an electrical meter repairer. (Tr. 21-22). Additionally, at step five, the ALJ found that Plaintiff could perform other jobs in the national economy before September 13, 2009. (Tr. 22, 53-54). The ALJ thus found that Plaintiff was not disabled at any time prior to September 13, 2009. (Tr. 23).

Beginning on September 13, 2009, however, the ALJ found that Plaintiff had the RFC to

3

perform sedentary work with various restrictions, but was unable to work an eight-hour day or a 40-hour work week. (Tr. 21). At step four, the ALJ found that Plaintiff could not perform his past relevant work beginning September 13, 2009, and that since that time there were no jobs in the national economy that Plaintiff could perform. (Tr. 22-23). The ALJ found that Plaintiff was not disabled prior to September 13, 2009, but became disabled on that date for SSI purposes. (Tr. 23). The ALJ found that, for DIB purposes, Plaintiff was not disabled prior to his date last insured of December 31, 2008. *Id.*

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

4

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT AND ANALYSIS

Plaintiff raises the following issues on appeal, not all of which need to be addressed for the reasons set forth below:

1. Whether the ALJ applied an improper legal standard in finding that Plaintiff's coronary artery disease was a "nonsevere impairment" prior to September 13, 2009;

2. Whether the "onset date of disability" chosen by the ALJ was supported by substantial evidence;

5

3. Whether Plaintiff's coronary artery disease and heart failure are "slowly progressive" conditions such that the ALJ's failure to call a medical advisor to assist him in determining the medically correct onset date violates SSR 83-20;

4. Whether the ALJ's finding that Plaintiff's ability to "stoop" decreased from about two hours per day to zero at midnight on September 13, 2009 is supported by substantial evidence and a "convincing medical rationale";

5. Whether the ALJ erred in failing to address the opinions of Plaintiff's treating physician, Dr. McCrary; and

6. Whether the ALJ's failure to follow the psychiatric review technique regulation justifies reversal and remand.

Because reversal is plainly warranted based on Claim 6, the discussion here is confined to that claim. As to his Claim 6, Plaintiff asserts that the ALJ failed to comply with the psychiatric review technique ("PRT") regulation as evidenced by the fact that the decision does not even mention Plaintiff's anxiety or depression. (Doc. 14 at 36; *see also* Doc. 18 at 8-9 [reply brief]). Plaintiff argues that the ALJ's error was harmful because he has a colorable mental impairment claim. (Doc. 14 at 37-38).

Defendant responds that Plaintiff never asserted any mental impairment in his disability applications, and the state agency medical consultant noted that Plaintiff did not allege that his mental impairments limited his activities of daily living. (Doc. 15-1 at 28-29). Defendant urges that the ALJ had no duty to investigate purported disabilities that Plaintiff did not raise. *Id.* at 28. Further, Defendant contends that Plaintiff admitted that he was never treated for depression, which undermines his claim that his symptoms were severe. *Id.* at 29.

Pursuant to 20 C.F.R. § 404.1527(c), the ALJ is obligated to "evaluate every medical opinion" submitted. An ALJ is required to develop the facts related to a disability claim "fully and fairly." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). When a claimant has multiple

6

impairments, the Act requires the Commissioner to "consider the combined effects of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. A claimant's failure to mention specific impairments at the hearing is not dispositive of the ALJ's obligation to consider all of the medical evidence in the record as well as any impairments that have significant supporting evidence. *Moore v. Astrue*, 2012 WL 1719183, *4 (N.D. Tex. 2012) (Toliver, M.J.). The regulations require that the ALJ evaluate mental impairments by following a special PRT procedure. 20 C.F.R. § 404.1520a. Nevertheless, procedural perfection is not required in Social Security disability cases as long as the claimant's substantial rights have not been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

In *Bragg v. Commissioner of Social Security Admin.*, the administrative record contained two notations regarding claimant's history of carpal tunnel syndrome and several notations and diagnoses regarding her migraine headaches. 567 F.Supp.2d 893, 907 (N.D. Tex. 2008) (Godbey, J.). The ALJ did not acknowledge either impairment. *Id*. The district court reversed and remanded, holding that the ALJ had a duty to assess whether those impairments were "severe" impairments at step two of the sequential analysis. *Id.* at 896, 907.

Similarly, in *Wingate v. Astrue*, the district court reversed and remanded when the ALJ failed to even mention the claimant's mental health issues despite more than a dozen references in the record to his mental problems. 2009 WL 3064685, at *16, 19 (S.D. Tex. 2009). The ALJ's omission of relevant evidence of a mental impairment in a claimant's record indicates that the ALJ failed to "fully and fairly" develop the facts. *Id.* at *15; *see also Cannon v. Astrue,* 2009 WL 2448261, at *4-5 (S.D. Tex. 2009) (reversing and remanding where the ALJ failed to

7

mention record evidence of a claimant's depression diagnosis); *but cf. Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (holding that the ALJ did not err by failing to consider the claimant's alleged mental impairments where the claimant did not present any evidence that he suffered from a mental illness and only mentioned briefly at the administrative hearing that he was embarrassed that others had to do the chores he previously had done); *Ranes v. Astrue*, 2009 WL 2486037, at *4 (N.D. Tex. 2009) (Fitzwater, C.J.) (upholding the ALJ's finding that the claimant was not disabled when there was no testimony at the hearing and the record contained no evidence of mental impairment).

In the present case, Plaintiff's treating physician noted Plaintiff's anxiety and depression in the medical records approximately two dozen times. (Tr. 194-202, 205-06, 208-09, 211, 213-14, 219, 221-22, 227, 229). Plaintiff also stated at the administrative hearing that he was depressed, although he had never been referred for mental health treatment. (Tr. 43-44). The ALJ's failure to acknowledge Plaintiff's anxiety and depression indicates that the ALJ did not evaluate every medical opinion and consider the combined effects of all of Plaintiff's impairments in violation of the regulations. *See* 20 C.F.R. §§ 404.1523, 404.1527(c). Thus, the ALJ's determination as to which of Plaintiff's impairments were severe at step two of the sequential analysis is not supported by substantial evidence. *Bragg*, 567 F.Supp.2d at 907.

The ALJ also did not apply the PRT procedure. *See* 20 C.F.R. § 404.1520a. The ALJ made no mention of Plaintiff's mental impairments in his summary of the medical evidence and did not discuss Plaintiff's limitations based on those impairments. This error is not harmless, and remand is required on this basis. *See Biles v. Astrue*, 2010 WL 4688810, *9 (N.D. Tex.) (Stickney, M.J.) (holding that where a non-frivolous claim of mental impairment exists, the

ALJ's failure to follow the PRT and make the required findings constitutes legal error and requires remand), *adopted by* 2010 WL 4705117 (N.D. Tex. 2010); *see also Haynes v. Astrue*, 2012 WL 1969335, *3 (N.D. Tex.) (Toliver, M.J.) (same), *adopted by* 2012 WL 1969331 (N.D. Tex. 2012). Because reversal is warranted, the Court need not address Plaintiff's remaining claims as he can raise those issues before the ALJ on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 12) should be **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 15) should be **DENIED**.

**SO RECOMMENDED** on February 19, 2013.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE